**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BRITTNEY KENNEDY, INDIVIDUALLY and as Surviving Spouse, on behalf of minor M.S.K. and as Anticipated Personal Representative of the Estate of MARQUIS KENNEDY** | § § § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 4:24-cv-208-p** |
| **THE CITY OF ARLINGTON, TEXAS, ARLINGTON POLICE DEPARTMENT, D/B/A ARLINGTON BASIC POLICE TRAINING ACADEMY, CITY OF ARLINGTON PURCHASING DEPARTMENT, and GRACIE UNIVERSITY** | § § § § § § § § | |
| **Defendants.** | § § § | |

---

## ARLINGTON DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

---

COMES NOW, Defendants City of Arlington, Texas, Arlington Police Department, the Arlington Police Training Academy, and the City of Arlington Purchasing Department (collectively, "the City" or "Arlington") and, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this its Motion to Dismiss Plaintiff's First Amended Complaint ("Plaintiff's Complaint"), Doc. 8, and brief in support, showing:

### I.
### SUMMARY

All claims against the City of Arlington, the Arlington Police Department, the Arlington Police Training Academy, and the Arlington Purchasing Department in Plaintiff's Amended

Complaint should be dismissed. In addition, pursuant to the election of remedies in the Texas Tort Claims Act, the City moves for the dismissal of any state law claims against Corporal Bateman.

**A.    Brittney Kennedy's claims against the City of Arlington should be dismissed.**

Kennedy's claims against the City should be dismissed. First, the constitutional claims alleged against the City should be dismissed because Kennedy has not pled plausible factual allegations that Marquis Kennedy suffered a constitutional violation, nor that the City caused him to suffer a constitutional violation, nor any policy that was the moving force behind any such violation. Second, Kennedy's claims that the City's alleged negligence and gross negligence caused Marquis Kennedy to suffer a workplace injury should be dismissed under Texas Labor Code, § 408.001 (a), which provides that workers' compensation benefits are the exclusive state law remedy against the City in case of a workplace injury. Because Kennedy's state law claims are subject to an exclusive-remedy bar in the Texas Workers' Compensation Act, the city's entitlement to government immunity has not been waived, and this court lacks subject-matter jurisdiction over her state law claims. Third, the City is entitled to governmental immunity from intentional torts and from gross negligence. Fourth, even assuming *arguendo* that any claims against the City should not be dismissed in their entirety, Brittney Kennedy's request for punitive damages should be dismissed because neither state nor federal law permits recovery of punitive damages against the City.

**B.    Brittney Kennedy's claims against the Arlington Police Department, Arlington Police Training Academy, and City of Arlington Purchasing Department should be dismissed.**

Plaintiff Brittney Kennedy's ("Kennedy") claims against the Arlington Police Department, the Arlington Police Training Academy, and the City of Arlington Purchasing Department should be dismissed because each of the three is a non-jural entity. See *Darby v. Pasadena Police Dep't*,

939 F.2d 311 (5th Cir. 1991). Because they are not entities that can be sued, Kennedy has failed to state a claim for which relief can be granted, as to these defendants. Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).

**III.**
**TABLE OF CONTENTS**

I. Summary ............................................................................................................... i

    A.    Brittney Kennedy's claims against the City of Arlington should be dismissed. ............................................................................................... ii

    B.    Brittney Kennedy's claims against the Arlington Police Department, Arlington Police Training Academy, and City of Arlington Purchasing Department should be dismissed. ....................................................... ii

III. Table of Contents ............................................................................................. iv

IV. Table of Authorities ......................................................................................... vi

V. Background ......................................................................................................... 1

    A.    Procedural History ................................................................................ 1

    B.    Factual allegations. ............................................................................... 1

    C.    Causes of action. .................................................................................. 2

        1.    Federal claims. ......................................................................... 2

        2.    State claims. .............................................................................. 2

VI. Arguments and Authorities ............................................................................... 3

    A.    Standard of review. .............................................................................. 3

        1.    Kennedy must allege facts, not simply conclusory allegations, to state a claim for relief against the City that is plausible. ........................... 3

        2.    The lack of subject-matter jurisdiction is a ground for dismissal under Rule 12(b)(1). ................................................................... 4

        3.    The Court may rely on the video footage of the training exercise involving Marquis Kennedy. ..................................................... 5

    B.    Kennedy's constitutional claims against the City should be dismissed. ................ 6

        1.    Kennedy has not plausibly alleged a federal constitutional violation. ...................................................................................... 6

        2.    Kennedy has not plausibly alleged any of the three elements necessary to establish municipal liability. ................................. 13

    C.    Kennedy's State Law claims are precluded by the Texas Workers' Compensation Act's Exclusive Remedy Provision. ............................. 17

    D.    There has been no waiver of the City's governmental immunity for Kennedy's state law claims. ............................................................... 18

        1.    Kennedy's Intentional Torts Claims ....................................... 19

        2.    Training police officers is a governmental, not a proprietary function. .................................................................................. 20

E.    Punitive and Exemplary damages are not recoverable against a municipality. ............................................................................................ 21

F.    All of Kennedy's claims against the Arlington Police Department, Arlington Police Training Academy, and Arlington Purchasing Department should be dismissed because they are non-jural entities. ...................................... 21

G.    The City moves for dismissal of all state law tort claims against Corporal Shelley Bateman, if any are pled. ...................................................... 25

VII. Conclusion ........................................................................................................ 26

# IV.
## TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)........................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 3, 4

*Baker v. City of Arlington*, No. 4:20-CV-00385-P, 2020 WL 6063311 (N.D. Tex. Oct. 14, 2020)........................................................................................................ 15

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................. 6

*Barrie v. Nueces County District Attorney's Office*, 753 Fed. Appx. 260 (5th Cir. 2018)........................................................................................................................ 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 3, 4

*Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982) .................................................. 14

*Bian v. Clinton*, 605 F.3d 249 (5th Cir. 2010) ........................................................ 5

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)................................... 4

*Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008)........................................ 15

*City of Arlington v. Whitaker*, 977 S.W.2d 742 (Tex. App.—Fort Worth 1998, pet. denied) ................................................................................................................. 19

*City of Canton v. Harris*, 489 U.S. 378 (1989)...................................................... 6

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ............................... 21

*City of San Antonio v. Maspero*, 640 S.W.3d 523 (Tex. 2022) ............................. 18

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)............................................ 15

*Clegg v. City of Fort Worth*, No. 02-17-00040-CV, 2017 WL 6377433 (Tex. App.—Fort Worth 2017, no pet.) (mem. op) .......................................................... 23

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)................... 4

*Combs v. City of Dallas*, 289 F. Appx. 684 (5th Cir. 2008) (per curiam) ......... 22, 23

*Connick v. Thompson*, 563 U.S. 51 (2011) ........................................................... 17

*Daniels v. Williams*, 474 U.S. 327 (1986) ............................................................ 12

*Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) .................. 22, 23, 25

*Darden v. City of Fort Worth, Texas*, 880 F.3d 722 (5th Cir. 2018) ........................ 6

*Delgado v. River Oaks Police Dep't*, No. 20-15-002050-CV, 2016 WL 6900900 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.)................................... 24

*Duarte v. City of Lewisville*, 759 F.3d 514 (5th Cir. 2014) .................................. 24

*Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.375 (5th Cir. 2005)........................................................................................................................ 8

FED. R. CIV. P. 17(b) ................................................................................................ 22

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)...................................... 4

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ................................................... 7

*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992) ................................................. 14

*Garcia v. Dallas Police Dep't*, No. 3:13-cv-1261-B-BH, 2013 WL 5433502 (N.D. Tex. July 1, 2013), Mag. Opinion, accepted, 2013 WL 5434165 (N.D. Tex. Sept. 27, 2013).................................................................................................. 23

*Gen. Svcs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591 (Tex. 2001)..................... 18

*Goodman v. Haris County*, 571 F.3d 388 (5th Cir. 2009) ................................................... 8

*Goodman v. Harris County*, 571 F.3d 388 (5th Cir. 2009).................................................. 20

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................... 6, 7

*Groden v. City of Dallas, Tex.*, 826 F.3d 280 (5th Cir. 2016) ............................................. 15

*Hagwood v. Dallas Police Dep't*, No. 3:15-cv-2622-L-BN, 2015 WL 6688721, (N.D. Tex. Sep. 11, 2015), Mag. Opinion accepted, 2015 WL 6690045 (N.D. Tex. Oct. 30, 2015)................................................................................ 23

*Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004).................................................... 18

*Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014) ......................................................... 6

*Hogan v. Cunningham*, 722 F.3d 725 (5th Cir. 2013) .................................................... 7

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998)............................................................................................ 5

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ................................................... 15

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004) ........................................................................................ 16

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004) ........................................................................................ 12

*Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992)........................................................ 14

*Kelson v. Clark*, 1 F.4th 411 (5th Cir. 2021) ........................................................... 7

*Languirand v. Hayden*, 717 F.2d 220 (5th Cir. 1983) ................................................... 14

*Lone Star Fund V(U.S.) L.P. v. Barclay's Bank PC*, 594 F.3d 383 (5th Cir. 2010) ...................... 5

*May v. Andres*, No. 3:16-cv-1674-L, 2017 WL 495832 (N.D. Tex. Feb 7, 2017) ...................... 23

*Michigan v. Chesternut*, 486 U.S. 567 (1988) ........................................................... 7

*Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658 (1978) .................................. 13

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................ 24

*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ........................................... 15

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002)................................................. 13

*Pyle v. City of Harlingen*, No. 1:13-147, 2014 WL 1230026 (S.D. Tex. March 20, 2014)............................................................................................................... 23

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................................. 5

*Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012)................................................. 18

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc)........................................... 4

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................... 6

*Skyy v. City of Arlington*, 712 Fed. Appx. 396 (5th Cir. 2017)................................... 14

*Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997) ..................... 13

*Spotts v. United States*, 613 F.3d 559 (5th Cir. 2010) .................................................. 5

*St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754 (5th Cir. 2023) .......... 19

*St. Tammany Parish v. Fed. Emer. Mgmt. Agency*, 556 F.3d 307 (5th Cir. 2009) ........ 5

*Tarrant County v. Bonner*, 574 S.W.3d 893 (Tex. 2019).............................................. 18

*Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379 (Tex. App.—Fort Worth 2008, no pet.).............................................................................................. 26

*Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575 (Tex. 2001)............................. 20

*Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530 (Tex. 2017) ......... 26

*Williams v. City of Dallas Police Dep't*, No. 3:09-cv-0275-P, 2009 WL 812239 (N.D. Tex. Mar. 13, 2009), Mag. Opinion accepted, 2009 WL 812239 (N.D. Tex. Mar. 26, 2009)....................................................................................................... 23

*Williams v. City of Midland*, 932 S.W.2d 679 (Tex. App.—El Paso 1996, no writ)................... 21

*Wolcott v. Sebelius*, 635 F.3d 757 (5th Cir. 2011).......................................................... 5

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010)................................... 13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 101.021 ..................................................................... 19

Tex. Civ. Prac. & Rem. Code § 101.0215 ............................................................. 19, 20

Tex. Civ. Prac. & Rem. Code § 101.024 ..................................................................... 21

Tex. Civ. Prac. & Rem. Code § 101.0574 ................................................................... 19

Tex. Lab. Code § 408.001............................................................................................. 17

Tex. Local Gov't Code § 341.003 ................................................................................ 23

Tex. Occ. Code § 1701.2551 ........................................................................................ 20

**Rules**

37 Tex. Admin. Code § 217.1 ................................................................................. 10, 11

Fed. R. Civ. P. 12(b)(1) ............................................................................................ i, 20

Fed. R. Civ. P. 12(b)(6) ................................................................................. i, 3, 20, 25

FED. R. CIV. P. 12(h)(3) ............................................................................................ 5

FED. R. CIV. P. 8(a)(2) .............................................................................................. 3

FED. R. EVID. 201 ................................................................................................... 24

**Treatises**

*Moore's Federal Practice* ........................................................................................ 4

William Blackstone, *Commentaries on the Laws of England* ...................................... 18

**V.**

**BACKGROUND**

**A.    Procedural History**

Plaintiff Brittney Kennedy filed her Original Complaint on March 5, 2024. Doc. 1. She

served the City with summons on March 6, 2024. Doc. 5. Plaintiff Brittney Kennedy filed her First

Amended Complaint on March 28, 2024. Doc. 8. The First Amended Complaint is the live

pleading in this case at this time.

**B.    Factual allegations.**

Marquis Kennedy was employed by the City of Arlington and was, in that capacity, a cadet

in the Arlington Police Academy. During a training exercise on September 23, 2022, Mr. Kennedy

indicated to supervising officers that he was in some type of medical distress. Two days later, Mr.

Kennedy passed away. His death certificate states that the primary cause of death was "unknown

etiology of cardiac arrest but likely atherosclerotic cardiovascular disease." Doc. 8, Exhibit J.

Plaintiffs' Complaint purports to describe the training exercise Mr. Kennedy was engaged

in based on an affidavit from Brittany Kennedy, who was not present at the training exercise, but

viewed a video of the training exercise. Far from the frenzied melee described in Plaintiffs'

Complaint and Ms. Kennedy's affidavit, the video of Marquis Kennedy participating in the

exercise in question demonstrates that the sequence of events was slow and deliberate. *See*

Appendix A (video of training exercise involving Marquis Kennedy). The training exercise was a

fight simulation. However, the Officers "fighting" with Mr. Kennedy punch the mat around him.

The punches thrown by the instructors are demonstrative, most not coming close to making

contact. Marquis Kennedy receives constant coaching during the exercises by attentive officers

who see him continue to exert himself. Twice, the officer observing stopped the simulation and

coached Marquis Kennedy in technique. At no point until the end of the exercise did Marquis

Kennedy indicate that he wanted to end the simulation. As soon as Marquis Kennedy gave clear indication that he did not wish to continue, the simulation ended, and Marquis Kennedy was taken out of the area.

Plaintiff's recitation of these facts is blatantly contradicted by the video.

## C.    Causes of action.

Kennedy appears to allege both federal and state law claims against the City of Arlington and against three non-jural entities which are departments and divisions in the City.

### 1.    Federal claims.

Kennedy alleges:

1. Violations of 42 U.S.C. § 1983: Excessive Force by APD Officers

2. Violations of 42 U.S.C. § 1983: Failure to Supervise Academy Instructors by the APD and the Academy

3. Violations of 42 U.S.C. § 1983: Inadequate training by the City

4. Violations of 42 U.S.C. § 1983: Screening and Inadequate Screening by the City

5. Civil Conspiracy to Violate 42 U.S.C. § 1983: Older Cadets are Forced Out With Fight Simulations

6. Civil Conspiracy to Violate 42 U.S.C. § 1983: Academy Officer Cpl. Bateman Conspires to Misrepresent Officer Kennedy's Death

### 2.    State claims.

Kennedy alleges:

7. Negligence of the City and Gracie University

8. Wrongful Death

9. Gross Negligence

# VI.
## ARGUMENTS AND AUTHORITIES

**A.     Standard of review.**

    **1.     Kennedy must allege facts, not simply conclusory allegations, to state a claim for relief against the City that is plausible.**

Rule 12(b)(6) recognizes that the failure to state a claim upon which relief can be granted is a defense to a claim. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires more of plaintiffs than simply alleging facts that indicate relief is possible; the Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (internal citations omitted). When "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*,

550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Pleadings that consist of "no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. In short, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

The devotion to the plaintiff's complaint does not extend to "conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Courts should not "strain to find inferences favorable to the plaintiffs." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). Since their inception, the federal rules have "insisted on more than conclusions, *and in this sense*, have never been a system of notice pleading." *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc). Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citing 2A *Moore's Federal Practice* ¶ 12.07 [2.-5] at 12-91).

### 2.    The lack of subject-matter jurisdiction is a ground for dismissal under Rule 12(b)(1).

The lack of subject-matter jurisdiction is a ground for the dismissal under Rule 12(b)(1). FED. R. CIV. P. 12(b)(1). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). The contention that a federal court lacks subject-matter jurisdiction "may be raised by a party, or the court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y & H Corp*., 546 U.S. 500, 506 (2006).

In applying Rule 12(b)(1), the district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint

supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010) (quoting *St. Tammany Parish v. Fed. Emer. Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (internal quotation marks omitted in *Spotts*)). "A district court properly dismisses a case for lack of subject matter jurisdiction 'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Bian v. Clinton*, 605 F.3d 249, 252 (5th Cir. 2010) (vacated as moot) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted in *Bian*)).

"The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (*citing Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Id*. (citing FED. R. CIV. P. 12(h)(3)).

### 3. The Court may rely on the video footage of the training exercise involving Marquis Kennedy.

Plaintiff Brittany Kennedy's ("Kennedy") Amended Complaint is largely comprised of her impressions and characterizations of the video of the police training exercise that immediately preceded Officer Marquis Kennedy's collapse. Generally, when considering a motion to dismiss for failure to state a claim, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V(U.S.) L.P. v. Barclay's Bank PC*, 594 F.3d 383, 387 (5th Cir. 2010). Kennedy's complaint relies heavily upon her affidavit describing viewing the video recording of the training exercise. Doc. 8, ¶¶ 20-21; Exhibit E. In that interest, Defendants would attach the said video as an appendix to this motion, as being a document central to the claim, referenced in Plaintiff's Amended Complaint. See Appendix, Page 1, video.

When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video. *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 381, (2007)). A court should not discount the nonmoving party's version of events unless the video evidence provides so much clarity that a reasonable jury could not believe his account. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 730 (5th Cir. 2018). In this case, the video evidence will meet that standard.

**B.    Kennedy's constitutional claims against the City should be dismissed.**

Kennedy's constitutional claims against the City should be dismissed. Section 1983 provides a vehicle for the vindication of federal constitutional rights. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). It permits suits against government officials who allegedly violate such rights. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). It also permits suits against local government entities, but only when the entity itself caused a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

**1.    Kennedy has not plausibly alleged a federal constitutional violation.**

Kennedy's federal constitutional claims against the City of Arlington should be dismissed because she has not plausibly alleged a federal constitutional violation. Kennedy alleges that 42 U.S.C. § 1983, "includes 1) Excessive use of force 2) Deficiencies in Police Training Programs that Amount to Deliberate Indifference 3) Employment Discrimination 4) Negligence 5) Vicarious Liability of Other Instructors/Civil Conspiracy and 6) Wrongful Death." Doc. 8, ¶ 49.

**a.    Kennedy has not alleged a plausible claim for excessive force against the City.**

Kennedy alleges that Marquis Kennedy was subject to excessive force. To establish a section 1983 excessive-force claim, a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need

and (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

Plaintiff's Amended Complaint negates the first two elements of this claim. Marquis Kennedy's cause of death was determined by the Certifying Physician, Adeel Khan, to have been "Unknown etiology of cardiac arrest, but likely atherosclerotic cardiovascular disease." Doc. 8, Exhibit J. The cause of death does not indicate an injury, but rather a chronic condition of plaque buildup on the arteries, commonly called "hardening of the arteries." There is no indication that Marquis Kennedy's chronic atherosclerotic cardiovascular disease resulted directly and only from any force used by any employee of the City.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). Here, there is no indication that the training in question was objectively unreasonable. All Arlington Police Department cadets receive training which includes the training to which Kennedy objects. Doc. 8, ¶ 19 ("The 'fight for your life' is a requirement for Cadets."). The training had been used for multiple academy classes. Doc. 8, ¶ 71. Although fight training is necessarily a dangerous undertaking, it is a standard undertaking for police training, and was not "objectively unreasonable" as part of police academy training.

Kennedy presumes that the training in question was a seizure, without reference to any law or precedent. Generally, in the Fourth Amendment context, a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave. *Kelson v. Clark*, 1 F.4th 411 (5th Cir. 2021) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). Marquis Kennedy was freely and willingly participating in police training, and was highly

motivated to complete it. Doc. 8, ¶ 10. Although failure would have brought steep consequences, there was no physical force or show of authority requiring him to pursue this training. In fact, Kennedy pleads that Marquis Kennedy knew that he could leave and re-attempt the training at a later date. Doc 1, ¶ 18 ("…it was made clear to him if he failed to continue, he would fail and must repeat the entire experience.").  Even assuming the force in question was unreasonable, the facts in this case do not indicate a seizure for purposes of Fourth Amendment analysis, and so do not constitute excessive force.

> **b.**    **Kennedy has not alleged a valid Failure to Supervise or Train claim against the City.**

Kennedy alleges claims for Failure to Supervise (Doc. 8, ¶ 51) and for Failure to Adequately Train (Doc. 8, ¶ 52-57). The elements of these two claims are similar, and the flaws patent in the pleading overlap. Courts in the Fifth Circuit have, in the past, treated the two as parts of the same cause of action. See, *Goodman v. Haris County*, 571 F.3d 388, 395 (5th Cir. 2009).

To demonstrate a claim for failure to train under § 1983, a plaintiff must demonstrate that a supervisor failed to supervise or train, that a City policymaker was deliberately indifferent to the need for additional training, and that the lack of training actually caused the injury alleged in this case. *Id*. Kennedy does not allege any examples of incidents in which similar events would have given any City policymaker notice of a training deficiency, and certainly not a pattern that would demonstrate deliberate indifference. Kennedy does not allege any policymaker who was aware of any such deficiency, and deliberately failed to act upon that knowledge. To establish deliberate indifference, a plaintiff must show at least a pattern of violations (fairly similar to what ultimately transpired) so that the failure of the city to respond with different training or better supervision reflects a deliberate or conscious choice to endanger constitutional rights. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.375, 381-83 (5th Cir. 2005).

Kennedy alleges, in a conclusory fashion, that instructors "essentially haze out" certain cadets, without any specific examples. Doc. 8, ¶ 94. Kennedy alleges that there were "many Worker's Compensation Applications and injuries," again, without any specific examples. Doc. 8, ¶ 95. These conclusory allegations, without any supporting facts, are insufficient to plead a cause of action. *Iqbal*, 556 U.S. at 663-64. Kennedy's claims for Failure to Supervise and Failure to Train should be dismissed.

### c.    Kennedy has not alleged a cause of action for Screening and Inadequate Screening by the City

Kennedy alleges a cause of action for inadequate medical screening of employment candidates. In doing so, Kennedy alleges that the City performed an examination for fitness which was insufficient to "guarantee that Cadets were physically prepared for the physical combat exercises." Doc. 8, ¶ 67. This does not, on its face, allege a violation of any right under the constitution or laws of the United States. Plaintiff attempts to define a novel right for an employee to be screened, no matter the cost, to guarantee sufficient physical fitness for the job to which they apply.

Even assuming this court chooses to create such a novel right, there is no indication that the physical fitness screening was so woefully inadequate as to constitute deliberate indifference. Marquis Kennedy passed a physical examination by a licensed physician before beginning any physical exertion. Doc. 8, Exhibit B. Further, the City performed its own physical fitness test involving a rowing machine. Doc. 8, ¶ 67. Kennedy's pleadings demonstrate on their face that the City was not deliberately indifferent to the possibility that a candidate to be a police officer must be physically fit, before beginning any physical training.

Plaintiff alleges three standards of care. Two of the alleged standards are plainly and obviously inapplicable. The only applicable standard was met.

Plaintiff alleges that Federal Law Enforcement Training Commission standards require "rigorous physical and medical standards" for all federal officers. Doc. 8, § 60.A. Notably, Officer Kennedy was not a federal officer. Officer Kennedy was, at all times relevant to this litigation, a City of Arlington Police Officer, and so inapplicable federal medical standards are not relevant, and offer no basis for recovery.

Plaintiff alleges that, to participate in a combative sport in Texas, contestants aged 36 or older must submit to an electroencephalogram (EEG) or electrocardiogram (EKG). According to the standard referenced in the Amended Complaint, note 3, this applies to individuals seeking licensure to be professionals, in "full-contact sporting events, including boxing, kickboxing, martial arts, and mixed martial arts." Even more so than the federal officer standards, the standards for medical examinations for professional combative sports contestants are entirely inapplicable in this case. Further, this standard is issued by the Texas Department of Licensing and Regulation. Peace Officers and their licensing are regulated by the Texas Commission on Law Enforcement, as Plaintiff alleges in Paragraph 60.B. of her Amended Complaint. This inapplicable standard cannot serve as any basis for recovery.

As plaintiff correctly alleges, in order for an individual to enroll in any basic peace officer licensing course, the provider must have on file documentation that the individual meets the eligibility for licensure. Doc. 8, ¶ 60.B; 37 Tex. Admin. Code § 217.1(a). Among those requirements is that the individual has been:

> "… examined by a physician, selected by the appointing or employing agency, who is licensed by the Texas Medical Board. The physician must be familiar with the duties appropriate to the type of license sought and appointment to be made. The appointee must be declared by that professional, on a form prescribed by the commission, within 180 days before the date of appointment by the agency to be: (A) physically sound and free from any defect which may adversely affect the performance of duty appropriate to the type of license sought; (B) show no trace of drug dependency or illegal drug use after a blood test or other medical test; and (C)

for the purpose of meeting the requirements for initial licensure, an individual's satisfactory medical exam that is conducted as a requirement of a basic licensing course may remain valid for 180 days from the individual's date of graduation from that academy, if accepted by the appointing agency."

37 Tex. Admin. Code § 217.1(b)(11).

Notably, only one test is expressly required, in Section 217.1(b)(11)(B), a blood test (or other medical test) to indicate drug dependency. There is no mention of an EEG or EKT. Plaintiff indicates that she understands that, of the 18 page Concentra exam result, conducted by a licensed physician as required by this standard, 12 pages were related to Officer Kennedy's medical condition and history, and six pages were medical waivers. Doc. 8, ¶ 60.B. Officer Kennedy was examined by a physician, as required by Section 217.1(b)(11)(a).

Plaintiff indicates that the City of Beaumont, in a recruiting posted, indicates that they perform an EKG, chest x-rays, and an EEG before beginning training. Doc. 8, ¶ 60.A. To the extent that this states a policy or standard, it is applicable to the City of Beaumont, not to the City of Arlington. There is no suggestion that the City of Arlington, merely because it adopted a different standard than another Texas municipality, has failed to comply with applicable regulations, or has adopted a deliberately indifferent standard.

Because Amended Complaint makes clear that the City's medical screening met applicable standards, and that the screening was not deliberately indifferent, Plaintiff has failed to alleged a cause of action for which recovery may be granted.

> **d.    Kennedy has not alleged a cause of action for Civil Conspiracy to Violate § 1983 under either theory alleged.**

Kennedy's claim for Civil Conspiracy to Violate § 1983 are predicated upon the presumption that, with additional discovery, testimony of others "will show" evidence of a cause of action. Doc. 8, ¶ 90. However, to plead a cause of action for Civil Conspiracy to Violate § 1983,

Kennedy's pleadings must allege facts that demonstrate the existence of a conspiracy involving state action, and that there was a deprivation of civil rights in furtherance of the conspiracy.

Kennedy alleges that the system of police cadet training excluded officers who were physically unable to complete the training. Kennedy does not allege that these officers were deprived of any right, constitutional, statutory or otherwise, to pass this training. Kennedy appears to allege, without reference to law, that cadets had a right to be observed by other cadets during this training. Again, even if this was violated, it does not describe a right recognized under law.

Kennedy does allege discrimination against workers aged 35 or older, alleging a violation of Texas Labor Code, Section 21.101, which forbids discrimination on the basis of age against individuals of age 40 or older. Doc. 8, ¶ 97. This use of conclusory, nonspecific language is not sufficient to overcome the pleading standard, and allege a cause of action for which relief may be granted. *Iqbal*, 556 U.S. at 678.

> **e.    Kennedy appears to allege a cause of action for Negligence under §
> 1983, which must fail if alleged.**

Kennedy appears to allege a cause of action under § 1983 for common-law negligence. Doc. 8, ¶ 49. This appears to be the basis for Kennedy's argument that the Texas Tort Claims Act is preempted, perhaps presuming that the claim is made under federal, rather than state, law. Doc. 8, § 89.

To the extent that this is true, the claim is frivolous. Common-law negligence cannot be the basis for liability under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). As such, and to the extent that Kennedy pleads a cause of action for common-law negligence as a basis for liability under § 1983, such claim should be dismissed.

2.    **Kennedy has not plausibly alleged any of the three elements necessary to establish municipal liability.**

Kennedy's federal constitutional claims against the City of Arlington should be dismissed because, even assuming *arguendo* she could establish a constitutional claim, she has not plausibly alleged that *the City* caused any such constitutional violations.

a.    **A local government cannot be held liable under a theory of *Respondeat Superior* or vicarious liability, under § 1983.**

Government officials may not be held liable under 42 U.S.C. § 1983 for alleged unconstitutional conduct of their subordinates under a theory of respondeat superior. *Iqbal*, 556 U.S. 676. Likewise, a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 694 (1978).

Municipal liability requires (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A municipality may not be subject to liability merely for employing a tortfeasor. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation. *Id.*

b.    **Kennedy does not allege a policy or custom.**

Kennedy's constitutional claims against the City should be dismissed because she has not plausibly alleged a municipal policy or custom. "The description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). To prove the existence of a custom, a plaintiff must either allege a formal, written policy, or a

"persistent, widespread practice of city officials ... which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

"Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Id.* To demonstrate a municipal custom or policy under Section 1983, a plaintiff must at least allege "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." *Id.* (quoting *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983)). Similarly, a city's custom or policy allegedly authorizing or encouraging police misconduct "cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality." *Fraire*, 957 F.2d at 1278–79 (quoting *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982)).

Kennedy does not identify any formal or written policy of the City, except that the City provides required training to newly hired police.  The only incident that Kennedy mentions in the Complaint is the single incident involving Marquis Kennedy. Kennedy has not included factual allegations, much less plausible ones, of a pattern of similar incidents. *Fraire*, 957 F.2d at 1278; *Skyy v. City of Arlington*, 712 Fed. Appx. 396, 401 (5th Cir. 2017) ("by relying on their single incident with APD officers, and without identifying similar incidents demonstrating a persistent, widespread practice of government officials or employees, Appellants' Amended Complaint fails to allege sufficient facts to demonstrate either deliberate indifference or a City custom.").

   c.    **Kennedy has not plausibly alleged the involvement of a City policymaker.**

Kennedy's constitutional claims against the City should be dismissed because she has not plausibly alleged the involvement of a City policymaker. "Only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The question of whether a particular official or government body has "final policymaking authority" is a question of state law and the official or government body must be policymaker for the specific area of the municipality's business that is at issue. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Kennedy makes no attempt to allege facts indicating that a policymaker had actual or constructive knowledge of the alleged policy or custom. *See Groden v. City of Dallas, Tex.*, 826 F.3d 280, 286 (5th Cir. 2016) ("In *Bolton*, we held that under Texas law, the final policymaker for the city of Dallas is the Dallas city council."); *Bolton v. City of Dallas*, 541 F.3d 545, 551 (5th Cir. 2008) ("State law instead reserves that role for the 'governing body.'). Kennedy must do more than invite "speculation that any particular policymaker … knew about the alleged custom." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018); *see also Baker v. City of Arlington*, No. 4:20-CV-00385-P, 2020 WL 6063311, at *3 (N.D. Tex. Oct. 14, 2020) (conclusory allegations that fire department lieutenant's actions constituted official policy of the city were insufficient to establish lieutenant had policymaking authority).

   d.    **Kennedy has not plausibly alleged an official policy or custom that was the moving force of the alleged constitutional violations.**

Kennedy's constitutional claims against the City should be dismissed because she has not plausibly alleged that an official policy or custom of the City was the moving force behind the alleged constitutional violations. "For a municipality to be liable on account of its policy, the plaintiff must show, among other things, either (1) that the policy *itself* violated federal law or

authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers "with 'deliberate indifference' as to its known or obvious consequences ... A showing of simple or even heightened negligence will not suffice." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). Addressing the deliberate indifference standard in the context of failure to train allegations, the Supreme Court explained,

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. … [A] municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."
>
> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. <u>The city's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution."</u> A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities."
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "<u>continued adherence to an approach that they know or should know has failed</u> to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately

> chosen a training program that will cause violations of constitutional
> rights.

*Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (underline added; citations omitted).

Kennedy does not allege facts indicating any sort of "policy of inaction," nor any "continued adherence to an approach that they know or should know has failed." Without plausible factual allegations raising his causes of action above the level of mere possibility, Kennedy's constitutional claims against the City should be dismissed.

**C.    Kennedy's State Law claims are precluded by the Texas Workers' Compensation Act's Exclusive Remedy Provision.**

Kennedy seeks relief based on the allegation that Marquis Kennedy died while under the employ of, and on a worksite of, the City. Doc. 8, ¶¶ 1 ("[Marquis Kennedy] who, at all times pertinent to this matter, was a Police Officer"), 109 ("At all times Fallen Officer Kennedy was acting within the course and scope of his employment by the City and the APD at the Academy…"). After Marquis Kennedy's death, Kennedy pursued a workers' compensation act claim against the City. Doc. 8, ¶ 46. Kennedy submitted a claim, which was subsequently denied. Doc. 8, Exhibit E, KENNEDY_0023.

Marquis Kennedy was an employee of the City and was covered by worker's compensation benefits. Doc. 8, ¶¶ 1, 46, 109; Exhibit E, KENNEDY_000023, ¶ 12-14. Workers' compensation benefits are Kennedy's exclusive remedy against the City for claims under Texas law. Tex. Lab. Code § 408.001(a). A determination that a work-related injury is noncompensable under an exception in Chapter 408 does not affect the exclusive remedy provisions under that section. *Id*. at (d).

Because Kennedy's claims against the City are subject to the exclusive-remedy bar in the Texas Labor Code, Chapter 408, the City's entitlement to governmental immunity has not been waived for state law claims and this court lacks subject matter jurisdiction.

D.    **There has been no waiver of the City's governmental immunity for Kennedy's state law claims.**

To the extent that she pleads any, Kennedy's state law intentional tort claims against the City should be dismissed because the City's entitlement to governmental immunity from intentional torts has not been waived by the Texas Legislature.

Governmental immunity is a common law doctrine that excludes suits for money damages against the government, at least partially on the theory that the government itself typically does not authorize the invasion of private rights. *Cf.* 1 William Blackstone, *Commentaries* *238-39 Historically, individual claimants could seek to remedy the invasion of their rights by public officials via suits against the individual public officials, and also by seeking to persuade the government (i.e., the chancellor in the court of chancery) to provide compensation. *Id.* at *236-37. Texas law has retained the common law doctrine, generally permitting suits against public officials who engage in tortious conduct, while also protecting the state and local governments from lawsuits for damages unless immunity has been waived by the Texas Legislature. *Gen. Svcs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001). Significantly, governmental immunity serves as an immunity from suit as well as from liability, and thus operates as a jurisdictional bar, defeating a trial court's subject-matter jurisdiction. *Tarrant County v. Bonner*, 574 S.W.3d 893, 900 (Tex. 2019) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012)); *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

The Texas Tort Claims Act provides a limited waiver of governmental immunity for certain tort claims. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022) ("The Texas Tort Claims Act, at issue here, waives immunity for the negligent acts of government employees in specific, narrow circumstances."). And the limited waiver provided by the Tort Claims Act is construed "strictly on the side of preserving immunity," since a municipality's common law

(governmental) immunity is considered to be in the public interest. *City of Arlington v. Whitaker*, 977 S.W.2d 742, 746 (Tex. App.—Fort Worth 1998, pet. denied).

Kennedy alleges that the Texas Tort Claims Act "does not apply in this matter both because it is preempted by federal law and because it cannot remedy the injustices that have occurred." Both these premises are offered without citation to law, and are both legally incorrect. The Texas Tort Claims Act applies to State Law causes of action, even in federal pleadings, and is not preempted under federal law. *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 763 (5th Cir. 2023). The waiver of immunity in the Texas Tort Claims Act and otherwise under Texas law is specific, and does not include a waiver due to insufficiency of a remedy. See, e.g., Tex. Civ. Prac. & Rem. Code § 101.021, et seq.

Kennedy nominally alleges various state law tort claims against the City, including negligence, wrongful death, and gross negligence, although the claims are intentional torts reframed as negligence, and so do not fall within any of the exceptions in the Texas Tort Claims Act. Further, Kennedy claims incorrectly that the city's immunity is waived under the governmental-proprietary distinction in the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code § 101.0215.

### 1.    Kennedy's Intentional Torts Claims

Kennedy's state law claims, although framed as negligence, appears to allege intentional torts such as assault, battery, and civil conspiracy against the City. These claims should be dismissed because the City's entitlement to governmental immunity from intentional torts has not been waived by the Texas Legislature.

Texas law is clear, there is no waiver of governmental immunity in intentional tort claims. Tex. Civ. Prac. & Rem. Code § 101.0574 (2). Section 101.0574 (2) of the Texas Tort Claims Act provides that the waiver of immunity under that Act does not apply to a claim "(2) arising out of

assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." *Id.*

The Texas Supreme Court and the Fifth Circuit have faithfully applied the clear language of § 101.057(2) in favor of immunity. See *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) ("The allegations fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment."); *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009) ("[T]he TTCA does not apply to claims arising out of an intentional tort."). Thus, Kennedy's state law assault, battery and civil conspiracy claims (if any) against the City should be dismissed. See FED R. CIV. P. 12(b)(1) & 12(b)(6).

### 2.    Training police officers is a governmental, not a proprietary function.

Kennedy alleges that "For a police academy, the sole proprietary function *is* to train police Cadets. Cadet training is THE function of the Academy and is a proprietary function." Doc. 8, ¶ 68 (emphasis in original). Kennedy claims that the Gracie training program is proprietary curriculum. *Id.* at 70. This does not properly distinguish between a proprietary and governmental function for purposes of governmental immunity. Tex. Civ. Prac. & Rem. Code § 101.0215.

The waiver of liability under the Texas Tort Claims Act only applies to governmental functions, those that are "enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public…" Tex. Civ. Prac. & Rem. Code § 101.0215 (a). The first item on the list of example governmental functions that follows is police and fire protection and control. *Id.* at (a)(1).

Marquis Kennedy was employed as a police officer, in the line of duty. Doc. 8, ¶¶ 1, 18. He was serving in the function at all times relevant to this case. He was engaged in basic training, in order to be licensed as a peace officer. Tex. Occ. Code § 1701.2551. Maintenance of peace officer licensure is part and parcel of police protection and control. Marquis Kennedy was training

with the City of Arlington, exclusively to be a peace officer in the City of Arlington. See, *Williams v. City of Midland*, 932 S.W.2d 679, 684 (Tex. App.—El Paso 1996, no writ) (finding recruitment of officers to be a proprietary function). Because training police cadets is a governmental, not proprietary, function under the Texas Tort Claims Act, the City's immunity is not waived.

**E.    Punitive and Exemplary damages are not recoverable against a municipality.**

Kennedy's claims for punitive damages should be dismissed because they are not recoverable against a municipality. "Absolute immunity from such damages obtained at common law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Since that absolute immunity was not abrogated by Congress in the creation of Section 1983, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Id.* Similarly, the Texas Legislature has not waived the City's immunity from exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE § 101.024 (no waiver of governmental immunity for exemplary damages under the Texas Tort Claims Act).

**F.    All of Kennedy's claims against the Arlington Police Department, Arlington Police Training Academy, and Arlington Purchasing Department should be dismissed because they are non-jural entities.**

Kennedy has listed three departments of the City as defendants: the Arlington Police Department, the Arlington Police Training Academy ("D/B/A/ Arlington Basic Police Training Academy" in the caption), and the City of Arlington Purchasing Department. Doc. 8, ¶¶ 3-5. Plaintiff alleges that each of these is a department of the City. *Id.*[1] All claims against these

---

[1] This is roughly true, although the Police Basic Training Academy is not a separate department, but a function of the Arlington Police Department, and the Office of Procurement is the team within the Arlington Finance Department responsible for directing and controlling purchasing.

departments should be dismissed because they are non-jural entities, and therefore lack the capacity to be sued.[2]

None of the departments of the City are jural entities which can be sued. The capacity of an entity to sue or be sued shall be determined by the law of the state in which the district court is held. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citing FED. R. CIV. P. 17(b)). The status of the entity to sue or be sued is determined by the charter of the City. *Id*. A Texas home rule city, like a corporation, is a single legal entity independent of its officers and departments, and can elect whether to allow those subdivisions to sue or be sued as independent entities. A suit can no more "proceed against the police department alone than it could against the accounting department of a corporation." *Id*.

The analysis in *Darby* is applicable here. In Darby, the Fifth Circuit looked to the charter of the City of Pasadena to ascertain whether the city granted the police department the capacity to be sued, found that the charter did not grant such authority, and concluded the police department was not a separate legal entity that could be sued. *Darby*, 939 F.2d at 313–14. The analysis in Darby is identical to the applicable analysis for this case. See *Id*. at 313–14; See also *Combs v. City of Dallas*, 289 F. Appx. 684, 686 (5th Cir. 2008) (per curiam) (claim against the Dallas Police Department held frivolous because DPD was not a distinct entity). The Fifth Circuit explained:

> Darby alleges that the police violated Title VII by terminating his employment. In order to vindicate this alleged wrong, Darby sued the department itself, but not the City. This was improper.
>
> The capacity of an entity to sue or be sued "shall be determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). In this case, Pasadena is a home rule municipality. The Texas Code grants all authority to organize a police force to the city itself, see Tex. Local Gov't Code Ann. § 341.003, and the Home Rule Charter of the City of the City of Pasadena in turn reserved to the municipality itself the power to sue and to be sued. Home Rule Charter, City of

---

[2] See Arlington City Charter, art. III, §1, Appendix, p.2

Pasadena, Texas, Art. 1, § 2. The Charter nowhere grants the department the power to sue or be sued.

A Texas home rule city is organized not unlike a corporation. Like a corporation, it is a single legal entity independent of its officers. Also, like a corporation, a Texas city is allowed to designate whether one of its own subdivisions can be sued as an independent entity. Absent this authorization, Darby's suit no more can proceed against the police department alone than it could against the accounting department of a corporation.

*Darby*. at 313 (footnote 1 omitted).

A home-rule municipality in Texas has the authority to provide for a police department and may also designate whether the police department can be sued separate from the municipality. *Pyle v. City of Harlingen*, No. 1:13-147, 2014 WL 1230026, at *3 (S.D. Tex. March 20, 2014). The political entity that created the department must have taken specific steps to grant the department with authority to be sued: otherwise, the department lacks the capacity to be sued. *Darby*, 939 F.2d at 313; *Combs*, 298 Fed. Appx. at 686 (5th Cir. 2008). The cited provision of the Texas Local Government Code provides: "A home-rule municipality may provide for a police department." Tex. Local Gov't Code § 341.003. This Court also has repeatedly recognized that a city police department is not a jural entity subject to suit. See, e.g., *May v. Andres*, No. 3:16-cv-1674-L, 2017 WL 495832, at *7 (N.D. Tex. Feb 7, 2017); *Hagwood v. Dallas Police Dep't*, No. 3:15-cv-2622-L-BN, 2015 WL 6688721, at *3–4 (N.D. Tex. Sep. 11, 2015), Mag. Opinion accepted, 2015 WL 6690045 (N.D. Tex. Oct. 30, 2015); *Garcia v. Dallas Police Dep't*, No. 3:13-cv-1261-B-BH, 2013 WL 5433502, at *2 (N.D. Tex. July 1, 2013), Mag. Opinion, accepted, 2013 WL 5434165 (N.D. Tex. Sept. 27, 2013); *Williams v. City of Dallas Police Dep't*, No. 3:09-cv-0275-P, 2009 WL 812239, at *2 (N.D. Tex. Mar. 13, 2009), Mag. Opinion accepted, 2009 WL 812239 (N.D. Tex. Mar. 26, 2009). State courts also reach the same conclusion. See, e.g., *Clegg v. City of Fort Worth*, No. 02-17-00040-CV, 2017 WL 6377433, at *1–3 (Tex. App.—Fort Worth 2017, no pet.) (mem. op) (Pittman, J.) (discussing district court ruling); *Delgado v. River Oaks Police Dep't*, No. 20-15-

002050-CV, 2016 WL 6900900, at *1 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.).

The City of Arlington is a home rule municipality. Like the Darby case, the Arlington City Charter gives the right to sue and be sued only to the City of Arlington.[3]  The Arlington City Charter provides:

> Under the name of the City of Arlington it shall be known in law and have succession and be capable of contracting and being contracted with, suing and being sued, impleading and being impleaded, answering and being answered unto, in all courts and tribunals, and in all amounts whatsoever, subject to the laws of the State of Texas, or which shall hereafter be passed.[4]

Since the Arlington City Charter is a public record and is publicly available, the Arlington Police Department, the Arlington Police Training Academy ("D/B/A/ Arlington Basic Police Training Academy" in the caption), and the City of Arlington Purchasing Department  request that the Court take judicial notice of the Arlington City Charter.  See FED. R. EVID. 201; *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (federal courts are not precluded from "taking notice of items in the public record" when ruling on a Rule 12(b) motion); *Duarte v. City of Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014) (public records are the proper subject of judicial notice).  A copy of Article III of the Arlington City Charter is attached in the Appendix.[5]  Further, the complete charter is publicly available on the City of Arlington website at https://www.arlingtontx.gov/city_hall/documents___permits/city_charter. The City Charter also confirms that Arlington is a home rule city.

Texas law gives the City the authority to organize a police department. Tex. Loc. Gov't Code § 341.003. There is no authority in the Charter for the Police Department, the Police Training

---

[3] Charter of the City of Arlington, Art. III, Sec. 1. Appendix, p. 12.
[4] *Id*.
[5] *Id*.

Academy, or the Purchasing Department to sue or be sued in their own names. Because, and to the extent that, Kennedy states claims for relief against these non-jural entities, she has failed to state a claim for which relief may be granted, and so those claims should be dismissed with prejudice as to refiling. FED. R. CIV. P. 12(b)(6); *Darby*, 939 F.2d at 313-14.

Further, this is not a simple misnomer, but is rather grounds for dismissal. The facts of this case, as the facts in *Darby*, foreclose any such characterization. *Barrie v. Nueces County District Attorney's Office*, 753 Fed. Appx. 260, 264 (5th Cir. 2018). Because Arlington Police Department, the Arlington Police Training Academy ("D/B/A/ Arlington Basic Police Training Academy" in the caption), and the City of Arlington Purchasing Department are not jural entities, Kennedy has failed to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6); *Darby*, 939 F.2d at 313-14. Accordingly, all of Kennedy's claims against Arlington Police Department, the Arlington Police Training Academy ("D/B/A/ Arlington Basic Police Training Academy" in the caption), and the City of Arlington Purchasing Department should be dismissed.

## G. The City moves for dismissal of all state law tort claims against Corporal Shelley Bateman, if any are pled.

The City moves for dismissal of all state law tort claims against Corporal Shelley Bateman, to the extent that they are pled. Kennedy appears to attempt to allege a cause of action against Corporal Bateman (who has neither been named as a defendant nor served with process) and against the City. Doc. 8, ¶¶ 98 - 108. State law tort claims are subject to the election of remedies in the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 101.106.

Section 101.106 requires a plaintiff to decide on a theory of tort liability before suit is even filed. A plaintiff must "decide *at the outset* whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." That decision is "an irrevocable election *at the time suit is filed*" whether

to "su[e] the governmental unit under the Tort Claims Act or proceed[ ] against the employee alone." *Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 536 (Tex. 2017) (original emphasis). To the extent that Kennedy brought state law tort claims against both the City and its employees, the election of remedies provides that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). This result holds true even when, as here, Kennedy's tort claims against the City should be dismissed as a result of the City's governmental immunity. *See Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 399–400 (Tex. App.—Fort Worth 2008, no pet.). Consequently, the City moves for dismissal of any state law claims against Corporal Shelley Bateman, to the extent that they were pled.

## VII.
### CONCLUSION

The City seeks dismissal of all of Kennedy's claims against the City, the Arlington Police Department, the Arlington Basic Police Training Academy, and the City Purchasing Department. The City alternatively seeks dismissal of all claims for punitive damages, to the extent any underlying causes of action remain against the City.

FOR THESE REASONS, the City of Arlington, the Arlington Police Department, the Arlington Basic Police Training Academy, and the City Purchasing Department request the Court grant this Motion to Dismiss, dismiss all claims by Plaintiff Brittney Kennedy as surviving spouse, on behalf of minor M.S.K. an as anticipated or actual personal representative of the estate of Marquis Kennedy, against the City of Arlington, Texas, the Arlington Police Department,  the Basic Training Academy, and the City Purchasing Department, order that Plaintiff take nothing by reason of this action, and award the City its costs, as well as any further relief to which the City may be justly entitled.

Respectfully submitted,

/s/ Joshua A. Skinner

CYNTHIA WITHERS
   *Deputy City Attorney*
Texas Bar No. 00791839
cynthia.withers@arlingtontx.gov

JOSHUA A. SKINNER
   *Assistant City Attorney*
Texas Bar No. 24041927
joshua.skinner@arlingtontx.gov

BENJAMIN J. GIBBS
   *Senior Attorney*
Texas Bar No. 24094421
benjamin.gibbs@arlingtontx.gov

CITY OF ARLINGTON
CITY ATTORNEY'S OFFICE
Post Office Box 90231, MS 63-0300
Arlington, Texas 76004-3231
Telephone: (817) 459-6878
Facsimile: (817) 459-6897

**ATTORNEYS FOR DEFENDANTS
CITY OF ARLINGTON, TEXAS,
ARLINGTON POLICE DEPARTMENT
ARLINGTON POLICE TRAINING ACADEMY
   ("D/B/A ARLINGTON BASIC POLICE
   TRAINING ACADEMY" IN CAPTION)
CITY OF ARLINGTON PURCHASING
   DEPARTMENT**