IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BRITTNEY KENNEDY, Individually and § <br> As Surviving Spouse, on behalf of minor § <br> M.S.K., and as Anticipated Personal § <br> Representative of the Estate of Marquis § <br> Kennedy, § <br>     Plaintiff, § <br> § <br> V. § <br> § <br> THE CITY OF ARLINGTON, TEXAS, § <br> ET AL., § <br>     Defendants. § | CIVIL ACTION NO. 4:24-CV-208-P |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING INDIVIDUAL DEFENDANTSAND CITY OF ARLINGTON'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pending before the Court are two motions to dismiss Plaintiff's Second Amended Complaint: (1) one filed by Defendant City of Arlington (hereinafter referred to as "the City") [doc. 37] on May 24, 2024 and (2) one filed by the fifteen individual Defendants who are licensed police officers employed by the City of Arlington (hereinafter referred to as the "Individual Officer Defendants") [doc. 61] on July 22, 2024.[1]  Having carefully considered the motions, responses, replies, and Plaintiff's Second Amended Complaint, the Court **RECOMMENDS** that both motions be **GRANTED** for the reasons set forth below.

---

[1] The Individual Officer Defendants are Shelly Bateman ("Bateman"), Jonathan P. Bucek ("Bucek"), Richard Coleman ("Coleman"), Tyler Ferrell ("Ferrell"), Patrick Knight ("Knight"), David Kurbinsky ("Kurbinsky"), Michael Leonesio ("Leonesio"), Leonard Ray ("Ray"), Ronnie McCoy ("McCoy"), Bobby Mugueza ("Mugueza"), [Unknown] Norwood ("Norwood"), Connor Shanahan ("Shanahan"), Sean Wheatley ("Wheatley"), Jastin D. Williams ("Williams"), and Bradley McNulty ("McNulty").  Gracie Global, LLC, dba Gracie University ("Gracie University") and John Doe are also named as Defendants, but they have not filed a motion to dismiss.

1

## I. RELEVANT BACKGROUND

### A. Relevant Facts

On March 5, 2024, Plaintiff Brittney Kennedy ("Kennedy") filed suit against multiple Defendants, including the City and the Individual Officer Defendants. In Plaintiff's Second Amended Complaint filed on May 13, 2024, Kennedy alleges that this suit arises out of the "tragic and wholly avoidable death of an Arlington Police Department Cadet in Training, Marquis Kennedy[,] on September 23, 2022 at the hands of Arlington Police Officers who were charged with his training." (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl.") at 2.) Kennedy asserts, *inter alia*, the following:

> In week 10 of a 16-week training course, the City's officer training involved a sequence of physical altercation exercises with Arlington Police Officers known informally as the "Fight for your Life" simulation in which cadets are required to engage in physical struggles with fellow officers. Those struggles, which involved jiu-jitsu holds, choke holds, compression holds, punches, and body blows with officers' knees, lasted approximately 15-16 minutes, and involved four differen[t] Arlington Police Officers taking turns fighting with Cadet Kennedy.[2] During this time, Cadet Kennedy was provided no breaks and no water, despite pleas for both. This training component is well-supervised by a number of other officers.
>
> Although it was apparent well before this time, the officers affirmatively recognized during the fourth simulation/altercation that Cadet Kennedy was in need of an ambulance. But, rather than call one, the officers simply placed Cadet Kennedy in the break room where he proceeded to stop breathing, lost consciousness, and eventually died. Cadet Kennedy's widow and his minor child bring this lawsuit against the individual officers who were involved, and the City of Arlington, for violation of Marquis Kennedy's rights under the Fourth and Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. Plaintiffs also bring this lawsuit against Gracie Global, LLC, the entity that trained and certified the Arlington Police Officers who conducted the training, for their negligence and gross negligence in training and certifying those officers.

(Pl.'s Sec. Am. Compl. at 2-3 (footnote added).) Kennedy further alleges:

---

[2] The four Individual City Defendants alleged to have been involved in the "Fight For Your Life Simulations" are Williams, Bucek, Kurbinsky, and McNulty. (Pl.'s Sec. Am. Compl. at 9-11.) These four officers were allegedly Level 1 or Level 2 "Gracie Survival Tactics" certified instructors. (Pl.'s Sec. Am. Compl. at 9-11.)

23. Fallen Officer Kennedy was a smart, well-educated, qualified, and apparently healthy forty-year-old male hired to serve and protect the community.

. . . .

29. On Friday, September 23, 2033, . . . from approximately 10:00 a.m. until approximately 10:16 a.m., Fallen Officer Kennedy, as a police officer in the line of-duty, was subjected to "Gracie Survival Tactics" jiu-jitsu combat training which included being placed in Gracie University designed jiu-jitsu submissions holds, choke holds, compression holds, punches and wrestling, and being *continuously* attacked for 15-16 minutes by 4 Gracie-trained, hydrated, rested, proactive gear-wearing instructors/Police Officers.  During this, Fallen Officer Kennedy was denied water despite requesting it.  He was not permitted any breaks, was put into positions which denied him air, carried the full weight of the trainers on his chest, was repeatedly punched, and it was made clear to him that if he failed to continue, he would fail and must repeat the entire physical training program.  Despite his repeated complaints of lightheadedness, thirst, fatigue and his obviously increasing poor health, his requests for care were met with instructor denials for a sustained period.  Fallen Officer Kennedy collapsed after repeated body compressions and repeated head and body blows with a 200 lbs. officer mounted on his abdomen and neck while fully exerting himself for an extended amount of time – all "in the context of jiu-jitsu training . . ."

. . . .

32. Once the simulation was stopped and Fallen Officer Kennedy was carried away the filming stopped and there is no record of any kind for approximately the next 10 minutes.

33. On information and belief, Fallen Officer Kennedy was placed in a chair in the break room.  There instead of a trained first responder, an untrained Cadet was left to care for him.  Fallen Officer Kennedy stopped breathing, lost consciousness, and fell off the chair, landing on his head.

. . . .

53. Fallen Officer Kennedy wrongfully died in the line of duty from a combination of deliberate indifferen[ce] to known medical distress and an abject failure to render medical care to treat the condition created by the Arlington Police Officers who caused it by using excessive force—i.e., strangling and asphyxiating Kennedy, compressing his body with their own body weight and force, applying blows to Kennedy's head and body, and causing Kennedy massive overexertion which led to an oxygen deprived brain (anoxia), ischemic bowel and the consequential multisystem organ failure.  The manner in which this death resulted was consistent with how Arlington Police Officers are trained by the City and Gracie Global.  The City did not, but should have, also trained its officers to know when a cadet was in medical distress and how to treat it before causing serious

3

> bodily injury and death, particularly given that the Arlington Police Officers were trained by the City to conduct the training in this dangerous manner. These failures on the part of the City were the moving force behind the violations of Kennedy's constitutional rights. . . .

(Pl.'s Sec. Am. Compl. at 7-11, 15 (citations omitted).)

In her Second Amended Complaint, Kennedy asserts claims for excessive force under the Fourteenth Amendment and a right to bodily integrity under the Fourteenth Amendment against Defendants Williams, Bucek, Kurbinsky, and McNulty in their individual capacities. (Pl.'s Sec. Am. Compl. at 1, 16-18.) In addition, Kennedy asserts a claim for bystander/supervisor liability against all the other Individual Officer Defendants for failing to stop the alleged use of excessive force against Marquis Kennedy by Defendants Williams, Bucek, Kurbinsky, and McNulty. (*Id*. at 18-22.) In addition, Kennedy asserts a claim against all the Individual Officer Defendants for violation of Marquis Kennedy's rights under the Fourteenth Amendment by acting with deliberate indifference to Marquis Kennedy's serious medical needs by failing to follow proper medical guidelines. (*Id*. at 20-22.) Finally, Kennedy asserts causes of action against the City for violations of her Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for: (1) failing to train its officers not to use excessive force in the training of its cadets and (2) for failing to implement any training to recognize when cadets are in medical distress. (Pl.'s Sec. Am. Compl. at 22-27.) Kennedy also asserts a claim for negligence and gross negligence against Defendant Gracie University.[3]

---

[3] In the Second Amended Complaint, Plaintiff claims that the Court has supplemental jurisdiction over these claims, and, alternatively, jurisdiction pursuant to "28 U.S.C. § 1332(a) because those claims involve a controversy between parties of diverse citizenship and an amount in controversy that exceeds $75,000." (Pl.'s Sec. Am. Compl. at 7.) As stated above, Gracie University has not filed a motion to dismiss.

### A. Individual Officer Defendants' Motion to Dismiss

In their motion to dismiss, the Individual Officer Defendants argue, *inter alia*, that the claims against them should be dismissed because "Plaintiff[] fail[s] to allege facts creating a constitutional violation, or, in the alternative, the Defendant Officers are entitled to qualified immunity from [Plaintiff's] claims." (Individual Officer Defendants' Motion to Dismiss ("Ind. Officer Defs.' Mot. to Dismiss") at ii; *see* Ind. Officer Defs.' Mot. to Dismiss at 5-14). Specifically, the Individual Officer Defendants, *inter alia*, state:

> Plaintiffs' Second Amended Complaint largely fails to identify what specific actions the Defendant Officers took that would lead to any liability. At most, Plaintiffs identify four officers as having engaged in a fight simulation that Mr. Kennedy voluntarily participated in as part of his training at the Arlington Police Academy. This voluntary, workplace activity does not implicate the Fourth or Fourteenth Amendments. There is no constitutional violation.
>
> Even if Plaintiffs could demonstrate a constitutional violation, there is not a case sufficiently similar to the facts here to have given the Defendant Officers fair warning that their conduct violated constitutional rights. In fact, the case law is quite the opposite. In a similar case involving a Texas State Trooper Trainee whose death resulted from a defensive-tactics simulation at the academy, the Fifth Circuit has held the officers were entitled to qualified immunity. The same result should be reached in this case.

(Ind. Officer Defs.' Mot. to Dismiss at ii.)

### B. The City's Motion to Dismiss[4]

In its motion to dismiss, the City argues that Plaintiff's *Monell* claims against it should be dismissed as Plaintiff has not alleged a constitutional violation. (The City's Motion to Dismiss Plaintiff's Second Amended Complaint ("City's Mot.") at 5-8.) In support, the City claims that

---

[4] The Court notes the City, in the appendix to its original motion to dismiss [doc. 10] manually filed a USB flash drive of the video recording of Marquis Kennedy's "Fight for your Life" simulation training on September 23, 2022. (The City's Appendix Supporting Motion to Dismiss at doc. 10-1, p. 1; *see also* docs. 11, 14.)

there was no seizure here under the Fourth Amendment or the Fourteenth Amendment. (City's Mot. at 6.) Specifically, the City states:

> First, there was no seizure here. The Fourth Amendment does not proscribe all contact between police and citizens, but only arbitrary and oppressive interference with individuals' privacy and personal security. A seizure occurs only when the restraint of liberty is the result of physical force or show of authority. In this case, the interaction was consensual. Marquis Kennedy applied and was hired to be a police officer with the City of Arlington. Marquis Kennedy knew that he could end the training exercise. Marquis Kennedy knew, as would another reasonable person in that situation, he was free to leave. Because, taking the facts as pled and in the light most favorable to Plaintiff, Marquis Kennedy was free to ignore police commands and go about other business or terminate the encounter, Plaintiff's Complaint does not sufficiently plead a Fourth Amendment seizure, but rather a consensual encounter.
>
> A seizure that violates the Fourteenth Amendment right to Due Process does not occur whenever there is a governmentally caused termination of movement, "but only when there is a governmental termination of freedom of movement *through means intentionally applied*." Since Kennedy alleges that the officers' use of force was part of a training exercise, it is not an application of force. Kennedy does not indicate anything more than negligence, and therefore Kennedy fails to allege a constitutional violation.
>
> Second, Courts have held, in similar situations, that training, even strenuous training that results in the death of a recruit does not rise to the level of a constitutional violation. Due process does not require governmental employers to provide a safe workplace. The City had no constitutionally "special relationship" with Officer Kennedy. . . .
>
> Marquis Kennedy was free to walk away from the training at any time, and was not incarcerated, institutionalized, or otherwise in confinement. An employee in a dangerous workplace is not in a custodial relationship, because the employee has voluntarily accepted employment. An employee who engages in strenuous job training and collapses, then dies of exhaustion-related complications and cardiac arrest, even presuming City actors failed to render aid after recognizing the employee's distress, does not rise to the level of a constitutional violation. Even when a recruit's death is cause by negligent and unnecessary head trauma and brain injuries (which does not appear to be the case here . . .) during defense-tactics and arrest-and-control tactics training, even knowing that the training would be too much for the trainee, and even with some evidence of nearly thirty years of similar injuries (which is entirely absent here), courts have held this to be insufficient to allege the violation of a constitutional right.

(City's Mot. at 6-7 (emphasis in original) (citations omitted).)

6

In addition, the City argues that Kennedy has not alleged plausible claims for failure to train, supervise, or render medical aid. (City's Mot. at 8-13.) Furthermore, the City claims that Plaintiff has not plausibly alleged any of the three elements necessary to establish municipal liability. (City's Mot. at 13-17.) [5]

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the dismissal of a plaintiff's claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

---

[5] The Court notes that the City also made other arguments, including that Plaintiff was seeking to impose vicarious liability on the City, was seeking punitive damages from the City, sued non-jural entities, and asserted state law tort claims. (City's Mot. to Dismiss at 17-20.) The Court will not address these issues because Plaintiff, in her response, indicated that such arguments were rendered moot by the filing of Plaintiff's Second Amended Complaint. (Plaintiff's Response to the City of Arlington's Motion to Dismiss at 7, n.2.)

7

sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (citations omitted). In sum, when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, the court assesses whether the plaintiff has pleaded a legally cognizable claim, not the likelihood of success. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Whether Plaintiffs have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for purposes of Defendants' Rule 12(b)(6) motion, Plaintiffs have no burden of proof." *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013). "Rather, the issue is whether Plaintiffs, based on their pleadings, have stated a claim upon which relief can be granted." *Id.* "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008). As in this case, "[w]hen defendants attach to a Rule 12(b)(6) motion to dismiss video evidence that is referred to in the complaint and central to it, a court may consider that evidence." *Rivera v. City of Pasadena*, 555 F.Supp.3d 443, 452 (S.D. Tex. Aug. 16, 2021). The court is to "discount[] the complaint allegations in favor of the video evidence only when the evidence blatantly contradicts the plaintiffs' well-pleaded factual allegations." *Id.* (internal quotation marks and citations omitted).

Section 1983 "creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman,* 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82 (1984)); *see* 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights

that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997) (internal quotation marks and citations omitted). For proof of a constitutional violation to be established, there must be allegations "that the conduct about which complaint is made was a proximate[]cause of the deprivation, *i.e.*, that the conduct about which complaint is made was the cause in fact of the deprivation and that a person of ordinary prudence would have foreseen that the conduct in question would have caused such a deprivation." *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614, 625 (N.D. Tex. 1999).

However, "[s]ection 1983 does not create supervisory or *respondeat superior* liability." *Brown v. Taylor*, 911 F.3d 235, 245 (internal quotation marks and citations omitted). "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Id*.

Municipalities and other local government entities are considered "persons" susceptible to suit under § 1983. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipalities, however, cannot be liable for damages under Section 1983 without some predicate constitutional injury at the hands of an individual state employee. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[I]f the [police officer accused of an unlawful arrest of respondent] inflicted no constitutional injury on respondent, it is inconceivable that [the City] could be liable to respondent."). There can be no municipal liability without an underlying constitutional violation, an essential element of a claim of municipal liability under Section 1983. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. Ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012) (citing *Becerra v. Asher*, 105 F. 3d 1042, 1048 (5th

Cir. 1997)) and *Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 120 (1992)).  In other words, municipal liability cannot be sustained under a theory of respondeat superior or vicarious liability. *See Monell*, 436 U.S. at 691; *Brd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  For liability to attach, "the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (quoting *Monell*, 436 U.S. at 694).  Any policy that "'allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional.'" *Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-CV-2914-N-BK, 2014 WL 1243978, at *6 (N.D. Tex. Mar. 26, 2014) (quoting *Piotrowski*, 237 F.3d at 579-80).

### III.   LEGAL ANALYSIS

#### A.   <u>Claims Against Individual Officer Defendants Williams, Bucek, Kurbinsky, and McNulty</u>

As set forth above, Kennedy alleges, *inter alia*, that Individual Officer Defendants Williams, Bucek, Kurbinsky, and McNulty violated Marquis Kennedy's Fourth Amendment right to be free from excessive force and Fourteenth Amendment's due process right to bodily integrity. (Pl.'s Sec. Am. Compl. at 1, 16-18.)  As to a constitutional violation under the Fourth Amendment to be free from unreasonable seizures, Kennedy alleges that Marquis Kennedy, as a recruit in training, was subjected to excessive force by the above-listed Individual Officer Defendants during the "Fight for your Life" simulation training exercises.  (*See* Pl.'s Sec. Am. Compl. at 16-27.) However, "[t]he Supreme Court has long held that 'a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement *through means*

10

*intentionally applied.*" *Gorman v. Sharp*, 892 F.3d 172, 174 (5th Cir. 2018) (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1987) (emphasis in original)).[6]  "A '[v]iolation of the Fourth Amendment requires . . . [that the] detention or taking itself *must be willful*.'" *Gorman*, 892 F.3d at 174 (quoting *Brower*, 489 U.S. at 596) (emphasis in original).  The Fifth Circuit has "faithfully applied this requirement." *Gorman*, 892 F.3d at 174 (citing cases).

Under the facts pleaded by Plaintiff in this case, the death of Marquis Kennedy after going through the training exercise—as sad and horribly tragic as it was—was not alleged to be "willfully" caused by Individual Officer Defendants Williams, Bucek, Kurbinsky, or McNulty. A careful reading of Plaintiff's Second Amended Complaint indicates that Plaintiff has not sufficiently alleged facts to show that the above-listed Individual Officer Defendants ***intended*** to seize Marquis Kennedy to satisfy this standard.  While Plaintiff alleges in one sentence of the Second Amended Complaint that the Individual Officer Defendants Williams, Bucek, Kurbinsky, and McNulty acted excessively, wrongfully, and ***intentionally*** in depriving Marquis Kennedy of his clearly established Fourth Amendment constitutional rights (*see* Pl.'s Sec. Am. Compl. at 16 (emphasis added)), Plaintiff does not support such statement with any non-conclusory factual allegations indicating that Individual City Defendants Williams, Bucek, Kurbinsky, or McNulty intended to seize Marquis Kennedy.  Moreover, a review of the video of the training exercise provides even more support to this conclusion.  As stated above, "there is no Fourth Amendment violation in the absence of intentional conduct." *Gorman*, 892 F.3d at 173. Thus, the Court **FINDS**, **CONCLUDES**, and **RECOMMENDS** that the Individual Officer

---

[6] *Gorman* involved an "accidental fatal shooting during an officer training session" in which Mississippi Gaming Commission Instructor Robert Sharp "forgot to replace his real firearm with a 'dummy' firearm" and "accidentally discharged his real firearm" against his fellow instructor John Gorman. 892 F.3d at 173.  The Fifth Circuit held that a Fourth Amendment violation for unreasonable seizure was not established because the "shooting here of Gorman—as tragic as it was—was not 'willful[ly]' performed by Sharp." *Id*. at 175.

Defendants' motion to dismiss on this issue should be **GRANTED** for failure to allege a constitutional violation under the Fourth Amendment.

As to a constitutional violation under the Fourteenth Amendment's due process right to bodily integrity, Kennedy alleges that Marquis Kennedy was subjected to conduct during his training that was so egregious and outrageous as to shock the conscience and was unjustifiable by any governmental interest. (*See* Pl.'s Sec. Am. Compl. at 16-27.) "The touchstone of due process is protection of the individual against *arbitrary action* of government." *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (emphasis in original); *see Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action."). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. 848; *see Sterling v. City of Jackson, Miss.*, 715 F. Supp. 3d 918 (S.D. Miss. Feb. 5, 2024). "Instead, substantive due process only protects against arbitrary action of government, and . . . under the shocks the conscious standard, only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Sterling*, 715 F. Supp. 3d at 929 (internal quotation marks and citations omitted). "On one end of the spectrum, [c]onduct [that is] *intended* to injure and that is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Sterling*, 715 F. Supp. 3d at 929 (internal quotation marks and citations omitted). "On the other end of the spectrum, 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" *Sterling*, 715 F. Supp. 3d at 929 (quoting *Lewis*, 523 U.S. at 849). "In some circumstances, the shocks the conscience standard can be satisfied by showing conduct that falls within the middle range of this spectrum—conduct

12

resulting from deliberate indifference." *Sterling*, 715 F. Supp. 3d at 929 (internal quotations marks and citations omitted). "Demonstrating deliberate indifference is a 'significantly high burden . . . to overcome.'" *Sterling*, 715 F. Supp. 3d at 929 (quoting *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 882 (5th Cir. 2024). "Deliberate indifference requires culpability beyond gross negligence, it 'must amount to an intentional choice'—one that 'consciously disregard[s] a known and excessive risk to the victim's health and safety.'" *Sterling*, 715 F. Supp. 3d at 929 (quoting *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018)).

"The Due Process Clause has historically applied to '*deliberate* decisions of government officials to deprive a person of life, liberty, or property.'" *Sterling*, 715 F. Supp. 3d at 930 (quoting *Collins*, 503 U.S. at 127 n.10). The Due Process Clause is a limitation on the State's power to act and is not a "'guarantee of certain minimal levels of safety and security.'" *Sterling*, 715 F. Supp. 3d at 930 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "In *DeShaney*, the Supreme Court noted what the Fifth Circuit has coined the special relationship exception to this categorical rule[,]" which applies to prisoners, pretrial detainees, people involuntarily committed to an institution, and children placed in foster care. *Sterling*, 715 F. Supp. 3d at 930 (internal quotation marks and citations omitted). "Under this exception, a state may create a special relationship with a particular citizen, and in such instances, the Constitution imposes upon the State a corresponding duty to assume some responsibility for his safety and general well-being." *Id*.

In this case, Marquis Kennedy was not a person in custody of the Arlington Police Department, but, instead, was employed by the Arlington Police Department. The United States Supreme Court has stated that "[n]either the text nor the history of the Due Process Clause" requires a governmental employer to provide its employees with a safe working environment. *See*

*Collins*, 503 U.S. at 126.[7]  As to the Fourteenth Amendment due process claim to the right to bodily integrity, Plaintiff alleges the following:

> The conduct of Defendants Williams, Bucek, Kurbinsky, and McNulty . . . was so egregious and outrageous as to shock the contemporary conscience, and was unjustifiable by any governmental interest.  Here, the use of force employed by Defendants Williams, Bucek, Kurbinsky, and McNulty was so extreme as to shock contemporary conscience—a "fight for your life" training should never be implemented in the literal sense.  If a cadet is not qualified to meet the vigorous physical requirements of police work, killing, or severely injuring him "violates the decencies of civilized conduct."  It certainly constitutes a violation of Kennedy's right to bodily integrity.

(Pl.'s Sec. Am. Compl. at 18).

A careful reading of Plaintiff's Second Amended Complaint in this case indicates that Plaintiff has not sufficiently alleged non-conclusory facts that demonstrate the Individual Officer Defendants Williams, Bucek, Kurbinsky, and McNulty **intended** to harm Marquis Kennedy to establish a violation under the Fourteenth Amendment substantive due process clause to a right to bodily integrity.  *See Slaughter*, 682 F.3d at 321-23.[8]  Thus, the question before the Court is whether the allegations against Individual Officer Defendants Williams, Bucek, Kurbinsky, and

---

[7] "In *Collins*, the estate of a municipal employee, who in the course of his employment died from exposure to noxious gases when he entered a manhole to unstop a sewer line, sued the city and alleged that the city had failed to train or warn its employees about *known hazards* in the workplace; that the employees had not been trained; that the employees had not been provided with safety equipment and safety warnings; that the city had received notice of the risks; and that the city 'systematically and intentionally failed to provide the equipment and training required by a Texas Statute." *Slaughter*, 682 F.3d at 321-22 (quoting *Collins*, 503 U.S. at 117-18).  In *Collins*, the Court held that the substantive due process clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm."  *Collins*, 503 U.S. at 126).  "The Court [further] held that, even though the alleged facts might have shown *deliberate indifference*, in the context of a voluntary employment relationship, such conduct was not 'arbitrary, or conscience shocking, in the constitutional sense' and would not support a substantive due process violation." *Slaughter*, 682 F.3d at 322 (quoting *Collins*, 503 U.S. at 128).

[8] In *Slaughter*, Plaintiffs "alleged that the Baltimore City Fire Department, in conducting [a] live burn [training] exercise, failed to provide Wilson[, the deceased firefighter recruit,] with safe working conditions, proper equipment, proper training, and particularized notice about risks of which Fire Department officials had actual knowledge."  682 F.3d at 322.  However, the Court in *Slaughter* found that, "in the voluntary employment context, the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department *intended to harm* Wilson, as would be necessary to establish a substantive due process violation." *Id*.

McNulty, based on their conduct during the simulated "Fight For Your Life" training, demonstrate deliberate indifference toward Marquis Kennedy, an employee, that was conscious shocking. After reviewing Plaintiff's allegations and the video of the training, the Court finds that Plaintiff has not alleged any non-conclusory facts that indicate Williams, Bucek, Kurbinsky, and McNulty consciously disregarded a known and excessive risk to Marquis Kennedy's health and safety that was beyond negligence or gross negligence. *See also Slaughter*, 682 F.3d at 321-23; *Waybright v. Frederick Cty., MD*, 528 F.3d 199 (4th Cir. 2008). While the facts alleged reveal a tragic and terribly sad occurrence, Plaintiff fails to allege facts that meet the constitutional threshold. Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to allege a constitutional violation pursuant to the Fourteenth Amendment substantive due process clause against Individual Officer Defendants Williams, Bucek, Kurbinsky, and McNulty. Thus, the Court **RECOMMENDS** that the Individual Officer Defendants' motion to dismiss on this issue should be **GRANTED**.

### B. Claim Against All Individual Officer Defendants

As set forth above, Plaintiff also asserts a claim against all the Individual Officer Defendants under the Fourteenth Amendment for failing to provide Marquis Kennedy with timely medical attention and care and to not have his serious medical needs met with deliberate indifference by failing to follow proper medical guidelines. (Pl.'s Sec. Am. Compl. at 20-22.) However, the Court notes that only pre-trial detainees have a right to medical care that is protected under the Fourteenth Amendment's Due Process Clause. *See Robinson v. Meeks*, No. 3:17-CV-606-K, 2018 WL 1399478, at *17 (N.D. Tex. Mar. 20, 2018) ("The Fourteenth Amendment's Due Process Clause protects a pre-trial detainee's right to medical care.") As Marquis Kennedy was not in custody at the time of the events leading to his death, Marquis Kennedy was not in a "special

relationship" with the Individual Officer Defendants or the City. Thus, the Individual Officer Defendants did not have a constitutional duty under the Fourteenth Amendment to provide adequate medical care to Marquis Kennedy. *See, e.g.*, *Dutton v. St. Louis Cty.*, No. 16-cv-668 (WMW/LIB), 2018 WL 6051273, at *4 n.5 (D. Minn. July 13, 2018) ("If Plaintiff was not a pretrial detainee at the time of the events in question, he has no claim [for a right to medical care] under the Fourteenth Amendment's substantive Due Process clause . . ."). Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to allege a constitutional violation against the Individual Officer Defendants for failing to provide Marquis Kennedy with timely medical attention and care pursuant to the Fourteenth Amendment substantive due process clause. Thus, the Court **RECOMMENDS** that the Individual Officer Defendants' motion to dismiss on this issue should be **GRANTED**.

### C. All Remaining Claims Against the Individual Officer Defendants and the City

As to the liability of any other claims against the Individual Officer Defendants as well as the City, the section 1983 claims against Defendants Williams, Bucek, Kurbinsky, and McNulty are "the gateway to all other section 1983 claims, for supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright*, 528 F.3d 199 at 203 (4th Cir. 2008); *see Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 356 (M.D. La. Mar. 25, 2022) ("The Supreme Court has explained that a municipality cannot be liable if a person has suffered no constitutional injury at the hands of the individual police officer.") (internal quotation marks and citations omitted); *see Blair v. City of Dallas*, 666 F. App'x 337, 342 (5th Cir. 2016). Because the Court has found and concluded, *supra*, that the none of the actions of the Individual Officer Defendants violated Marquis Kennedy's constitutional rights under the Fourth or Fourteenth Amendments, their

conduct cannot form the basis of a section 1983 liability claim against the remaining Individual Officer Defendants or the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986) (holding that, because a jury had found that an officer had not violated the victim's constitutional rights, there was no basis for municipal liability); *Ross v. City of Dallas*, No. 3:20-CV-1690-E, 2023 WL 2753988, at *6 (N.D. Tex. Mar. 31, 2023). Consequently, the Court **FINDS and CONCLUDES** that the remaining claims against the Individual Officer Defendants and the City should be **DISMISSED**. Thus, the Court **RECOMMENDS** that the remaining portions of the Individual Officer Defendants' Motion to Dismiss and the City's Motion to Dismiss be **GRANTED**.[9]

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

---

[9] Even if Plaintiff had properly alleged that one of the Individual Officer Defendants had violated one or more of Marquis Kennedy's constitutional rights, the Individual Officer Defendants would be entitled to qualified immunity as any alleged constitutional right was not clearly established at the time of the incident in question for the reasons stated in the Individual Officer Defendants' Motion to Dismiss. *See, e.g.*, *Carty v. Rodriguez*, 470 F. App'x 234 (5th Cir. 2012).

accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER[10]

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 30, 2024,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 16, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court notes that, if U.S. District Judge Mark Pittman accepts the undersigned's Findings, Conclusions, and Recommendation, the only remaining claims will be Plaintiff's claims for negligence and gross negligence against Defendant Gracie University. While Plaintiff also named John Doe as a Defendant, there is no proof of service on this Defendant. Consequently, any claims against John Doe should be dismissed pursuant to Federal Rule of Civil Procedure 4(m).