IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRITTNEY KENNEDY, Individually as Surviving Spouse, and on Behalf of Minor M.S.K., and as Anticipated Personal Representative of the Estate of MARQUIS KENNEDY,<br>　　　　Plaintiff,<br><br>v.<br><br>SHELLY BATEMAN, JONATHAN P. BUCEK, RICHARD COLEMAN, TYLER FERRELL, PATRICK KNIGHT, DAVID KURBINSKY, MICHAEL LEONESIO, LEONARD RAY, RONNIE MCCOY, BOBBY MUGUEZA, OFFICER NORWOOD, LEONARD RAY, CONNOR SHANAHAN, SEAN WHEATLEY, JASTIN D. WILLIAMS, BRADLEY MCNULTY, JOHN DOE, THE CITY OF ARLINGTON, TEXAS, THE ARLINGTON POLICE DEPARTMENT, D/B/A ARLINGTON BASIC POLICE TRAINING ACADEMY, CITY OF ARLINGTON PURCHASING DEPARTMENT, AND GRACIE UNIVERSITY,<br>　　　　Defendants. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO. 4:24-cv-00208-P<br>Relates to the Motion Referred to<br>Magistrate Judge Cureton |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S
PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION**

　　　　Plaintiff Brittney Kennedy, Individually as Surviving Spouse, and on Behalf of Minor M.S.K., and as Personal Representative of the Estate of Marquis Kennedy, Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), files these

Objections to the Magistrate Judge's Findings, Conclusions, and Recommendation Regarding Individual Defendants' and City of Arlington's Motions to Dismiss Plaintiff's Second Amended Complaint. (Doc. 69).

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................3

TABLE OF AUTHORITIES ...........................................................................................................4

I.    SUMMARY OF OBJECTIONS ...........................................................................................6

II.    ARGUMENT & AUTHORITIES .........................................................................................7

    A.    Standards of review. ..................................................................................................7

    B.    Plaintiff sufficiently alleged willful, intentional conduct on the part of the individual officers, or in the alternative, conduct that rises to the level of deliberate indifference. ...............................................................................................8

    C.    Plaintiff alleged sufficient facts showing a seizure under the Fourth and Fourteenth Amendment. .........................................................................................13

    D.    Because Marquis Kennedy was seized, he was denied the constitutional right to medical care. ................................................................................................15

    E.    Because there was a constitutional violation, Plaintiffs' claims against the individual officers and the City should not be dismissed. ......................................16

III.    CONCLUSION & PRAYER ...............................................................................................16

CERTIFICATE OF SERVICE .......................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Verizon Wireless Servs., L.L.C.*,
  875 F.3d 243 (5th Cir. 2017) .................................................................................. 8

*Allen v. Hays*,
  65 F.4th 736 (5th Cir. 2023) ................................................................................ 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 8

*Carty v. Tex. Dep't of Pub. Safety*,
  No. CIV A 206-CV-138 TJW, 2006WL 3332589 (E.D. Tex. Oct. 6, 2006) ................. 10, 11

*Collins v. City of Harker Heights, Tex.*,
  503 U.S. 115 (1992) ............................................................................................... 9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Services*,
  489 U.S. 189 (1989) ............................................................................................. 15

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982) ............................................................................... 8

*Kinney v. Weaver*,
  367 F.3d 337 (5th Cir. 2004) ................................................................................. 8

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................................................. 8

*Mann v. Adams Realty Co.*,
  556 F.2d 288 (5th Cir. 1977) ................................................................................. 7

*Morgan v. Hubert*,
  335 F. App'x 466 (5th Cir. 2009) .......................................................................... 8

*Nerren v. Livingston Police Dep't*,
  86 F.3d 469 (5th Cir. 1996) ................................................................................. 15

*Salas v. Carpenter*,
  980 F.2d 299 (5th Cir. 1992) ................................................................................. 8

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) ................................................................................. 8

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) .................................................................................................. 8

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
  355 F.3d 370 (5th Cir. 2004) .................................................................................................. 8

*Vardeman v. City of Houston*,
  55 F.4th 1045 (5th Cir. 2022) ......................................................................................... 13, 15

**Statutes**

28 U.S.C. § 636(b)(1) .................................................................................................................. 7

**Rules**

Fed. R. Civ. P. 72(b)(3) ............................................................................................................... 7

I.      SUMMARY OF OBJECTIONS

Considering the egregiousness of this case, this case should not be disposed of on the pleadings but should be decided on its facts.

On October 16, 2024, Magistrate Judge Jeffrey Cureton issued his Findings, Conclusions, and Recommendation regarding the Individual Defendant Officers' and the City of Arlington's Motions to Dismiss, recommending that both motions be granted. (Doc. 69). However, this recommendation is based on two faulty premises.

First, the Magistrate found that the Officers' conduct did not rise to the level that shocks the conscience under the Constitution, i.e., that the officers did not act intentionally. But a review of relevant case law and the facts alleged show that the conduct alleged in the complaint is intentional and the type of conduct that is considered conscience shocking.

Second, the Magistrate found that Marquis Kennedy was not "seized" during the "fight for your life" training exercise. The Magistrate's finding was based on the fact that as an employee, Marquis was presumably free to leave or not engage in the training exercise. But, this conclusion stems from a misunderstanding of what constitutes a seizure for section 1983 purposes. A seizure is the limitation of a person's ability to leave, however brief. Marquis was not free to leave because (1) his employment was conditioned on completing the exercise, and (2) more importantly, his freedom to leave was restricted during the training exercise because the officers executed chokeholds and other maneuvers that prevented Marquis from leaving for at least some period of time, ultimately to the point of his total incapacitation. This is sufficient to constitute a seizure.

Moreover, the facts show that when Marquis did try to stop the training exercise, his request was ignored. For example, when Marquis dropped his card during the exercise, which was supposed to constitute a request to stop, the officers ignored it and kept going with the simulation. Marquis was so exhausted at times that he was not even able to verbalize his desire to leave or quit. And in fact, despite seeing his exhausted state and the fact that he was not physically capable of participating in the exercise any longer, officers continued the training, placing Marquis in chokeholds, punching him, and engaging in various other acts that prevented him from leaving. Ultimately, Marquis was incapacitated to the point that he lost consciousness, at which point he certainly could not stop the training exercise or leave.

For these reasons, the Court should sustain Plaintiffs' objections and deny the Officers' and the City's motions to dismiss.

## II.   ARGUMENT & AUTHORITIES

**A.   Standards of review.**

The district judge reviews a party's objections to a magistrate's proposed findings and recommendations de novo. Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify [them], in whole or in part," may receive further evidence, or may return the matter to the magistrate judge with further instructions. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

In reviewing the Defendant's motions to dismiss, the pleading stage is not the point at which Plaintiff must establish the level of proof necessary to ultimately prevail. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Indeed, a "strong

framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, in the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). And, in the motion to dismiss context, Plaintiff's allegations must be taken as true. *See e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 696 (2009); *Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 249 (5th Cir. 2017). Courts do not evaluate the merits of the allegation but only consider whether plaintiffs have adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Thus, a pleading simply needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation omitted).

**B.  Plaintiff sufficiently alleged willful, intentional conduct on the part of the individual officers, or in the alternative, conduct that rises to the level of deliberate indifference.**

Plaintiff objects to the Magistrate's recommendation as it conflates willful, intentional conduct with an intent to injure. The law does not require that the individual officers intended to kill or harm Marquis Kennedy, only that they intended to commit the acts that resulted in the harm. *Salas v. Carpenter,* 980 F.2d 299, 307 (5th Cir. 1992) ("a procedural or substantive due process violation could occur if a state official causes injury by *arbitrarily* abusing governmental power."); *Kinney v. Weaver*, 367 F.3d 337, 373-74 (5th

Cir. 2004) (holding that intent is a fact issue generally not appropriate for summary judgment on qualified immunity).

Plaintiff alleged that the Officers used excessive, deadly force and were deliberately indifferent to Marquis's serious medical needs, in violation of Marquis's Fourth Amendment or Fourteenth Amendment rights. (Doc. 29 at 16-22). The fact that these violations took place in the employment context does not change the nature of the violations. Rather, the Supreme Court holds that "[t]he First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992).

Moreover, Marquis was the *intended* victim of the use of force – the officers meant to apply the force used to him, not someone else. And, they intended to apply the level of force that they actually used. This is not a situation where force was accidentally applied or applied unintentionally to a bystander. There is no real debate here that the officers intended to use the force that they actually did use, and that they applied it to the person to whom they intended to apply force. The fact that the consequences of that force were far more devastating or tragic than the Officers presumably expected or wanted does not make the force unintentional.

Another Texas district court is on all fours with the facts here, and that court appropriately denied the defendants' motion to dismiss. In that case, a Texas DPS trainee

was killed during a "arrest and control tactics drill" which resulted in head and brain injuries. *Carty v. Tex. Dep't of Pub. Safety*, No. CIV A 206-CV-138 TJW, 2006 WL 3332589, at *1 (E.D. Tex. Oct. 6, 2006). The plaintiff sued the DPS officers who conducted the drill and the DPS under § 1983, as well as the company that provided the defective training equipment. In denying the Defendants' motion to dismiss the due process claims, the court noted that (1) the DPS was aware of the risks of the drill due to prior injuries to trainees, and (2) the drill was a condition of continued employment. *Id.* at *2.

In analyzing the difference between negligent and intentional conduct in the employment context, the court noted that "[w]hen the actions that caused the injury fall within a middle range between negligence and intentional conduct, the point of conscience shocking will depend on the circumstances of the case and whether the defendant had the opportunity to deliberate before engaging in the challenged conduct." *Id.* at *3. In that case, the DPS required trainees to engage in the drill even though the drill had a history of causing traumatic brain injuries to recruits. The court found this conduct was sufficient to shock the conscience and meet the standard under § 1983. *Id.* In particular, the court distinguished the case from *Harker Heights*:

> The plaintiffs are not making general allegations that DPS failed to provide a safe workplace, but that DPS adopted and implemented policies, practices and procedures that violated Jimmy Carty's substantive due process rights to bodily integrity and life. Specifically, the complaint alleges that this policy of conducting the counter measure drill was perpetuated by DPS and its employees after they knew of the high risks involved with conducting the drill. Further, the drill was a condition of continued employment.

*Carty*, 2006 WL 3332589, at *2. The court went on to hold that the individual officers were not entitled to qualified immunity at that time because "as officers for DPS, Rodriguez

and Ballarta knew or should have known that their conduct, in implementing training, which had a long history of a high risk of head injury, was unlawful. At this stage, viewing the allegations in the light most favorable to the plaintiffs, the Court is unwilling to grant a qualified immunity defense." *Id.* at *6.

Plaintiff's claims here meet that same standard. These actions were not accidents; they were orchestrated and intentional assaults. The training simulation was titled "fight for your life." The idea that this was a training simulation suggests that the police instructors intended to put Marquis in fear of imminent harm. When Marquis consented to a training simulation, he was expecting *simulated* harms. And, he had a reasonable expectation that he would be able to stop the simulation or take a break for medical or health reasons. But that is obviously not what happened.

The Officers' deliberate indifference is evident throughout the "fight for your life" training exercise. During the assault in fight simulation 2, Simulation Coordinator Williams and the Academy Policy Coordinator both *refused to accept* Marquis Kennedy's revoked consent to participate and in fact there were two more fights after that where Marquis was clearly in medical distress. (Doc. 29 at 10, ¶ 31). By Simulation 4, Marquis dropped his "Officer in Distress" card, which was supposed to stop the training exercise. But the officers did not do so. (Doc. 29 at 9-11, ¶ 31). In fact, after Marquis dropped his card, one of the training officers simply pushed it away and Marquis was punched in the head approximately 10 more times. (Doc. 29 at 11, ¶ 31). In addition, the complaint alleges, and the video shows, that at times during the "fight for your life" exercise, officers were on top of Marquis, preventing him from leaving or moving. (Doc. 29 at 8-9, ¶ 29).

At some point in the training exercise, Marquis reasonably perceived the **real harms,** was exhausted, and communicated those **real harms** - asking for water and a break in front of all the other officers. (Doc. 29 at 10, ¶ 31). Bateman, Williams and Bucek refused him the opportunity to leave, receive water, or a break. (Doc. 29 at 10, ¶ 31). Instead, they expressed their intent to escalate and continue the assault. (Doc. 29 at 10, ¶ 31). Marquis's distress was ignored by his superiors as he was struggling to breathe, needed water, and was physically exhausted. Ignoring his serious medical needs, Bucek, Kurbinsky, McNulty and Bateman continued to orchestrate the fatal assault for approximately another 12 minutes. (Doc. 29 at 10-11, ¶ 31).

The Fourteenth Amendment creates a duty towards at-risk police cadets who are injured and detained by police officers. The Magistrate's finding was that Marquis was an employee, and that the City simply failed to provide a safe workplace. (Doc. 69). But willfully disregarding a known risk to health and safety goes beyond failing to provide a safe workplace and can become a due process violation. Here, the City and its Officers *willfully disregarded* a known and excessive risk to Marquis's health and safety by depriving him of air, water, breaks, and medical attention. This "fight for your life" simulation went beyond basic workplace training, escalating quickly into intentional assault. As such, even viewed in the context of the employer/employee relationship, this conduct is conduct that shocks the conscience and meets the deliberate indifference standard.

Plaintiff alleged that the City and the Officers knew that the "fight for your life" training had a history of injuring trainees, and the City had received numerous

complaints about use of force. (Doc. 29 at 23, ¶ 82). The City also had no training to recognize when cadets were in medical distress. Participation in the training was a requirement of employment. (Doc. 29 at 24-25, ¶¶ 84-99). And, as recognized by the court in *Carty*, (1) the use of force-based training against trainees or cadets when those exercises have been known to cause harm, (2) denial of basic care needs such as water and breaks, and (3) continuing an exercise when it is clear that a cadet is in medical distress, is the type of conduct that "shocks the conscience" at a constitutional level.

C.   **Plaintiff alleged sufficient facts showing a seizure under the Fourth and Fourteenth Amendment.**

The Magistrate also found that Marquis Kennedy was not "seized" during the "fight for your life" training exercise because Marquis was presumably free to leave or not engage in the training exercise. (Doc. 69 at 11). But, under Section 1983, a seizure arises anytime a person's ability to leave is limited, however brief. *Vardeman v. City of Houston,* 55 F.4th 1045, 1052 (5th Cir. 2022)

Marquis was not free to leave because (1) his employment was conditioned on completing the exercise, and (2) more importantly, his freedom to leave was restricted during the training exercise because the officers executed chokeholds and other maneuvers that prevented Marquis from leaving for at least some period of time. Ultimately, the officers rendered Marquis unconscious. This is sufficient to constitute a seizure.

In fact, when Marquis dropped his card during the exercise, which was supposed to constitute a request to stop, the officers ignored it and kept going with the simulation.

(Doc. 29 at 11, ¶ 31). Marquis was so exhausted at times that he was not even able to verbalize any desire to leave or quit. (Doc. 29 at 10-11, ¶ 31). And in fact, despite seeing his exhausted state and the fact that he was not physically capable of participating in the exercise any longer, officers continued the training, placing Marquis in chokeholds, punching him, and engaging in various other acts that prevented him from leaving. (Doc. 29 at 10-11, ¶ 31).

By the end of Simulation 4, Marquis was fully incapacitated, and hence involuntarily committed to the custody of the police instructors. (Doc. 29 at 11, ¶ 31). Any one of the first responders could have stopped the simulation-turned-assault. Instead, the Officers voluntarily continued the assault. The denial of medical care occurred throughout the training simulation and up to the point that Marquis was incapacitated and taken off camera, where he remained for over 10 minutes. (Doc. 29 at 11, ¶¶ 32-35). He was left under the supervision of an untrained cadet, not a first responder. (Doc. 29 at 11, ¶¶ 32-35). When he lost consciousness, he was described to EMS as "a little overheated." (Doc. 29 at 11, ¶35). Marquis's brain and organ damage indicated he was without oxygen for more than five minutes. (Doc. 29 at 12, ¶ 37).

Yet the Magistrate's conflation of the voluntary acts of the police instructors and the police academy's presumed lack of ill-will during the assault portion has two overlooked components — detaining Kennedy through coercion and involuntary custody via injury. Marquis was not free to leave because he was fully incapacitated by the Officers' own actions. Even prior to his incapacitation, when he had requested breaks and to stop the training, he was denied.

Such actions are enough to constitute a seizure under the Fourth Amendment. *See Vardeman,* 55 F.4th at 1050–51 ("Examples of such a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."); *DeShaney v. Winnebago Cnty. Dep't of Soc. Services*, 489 U.S. 189, 200 (1989) ("the protections of the Due Process Clause, both substantive and procedural, may be triggered when the State, by the affirmative acts of its agents, subjects an involuntarily confined individual to deprivations of liberty which are not among those generally authorized by his confinement.").

"[A]n arrest need not be the officer's purpose in order for his or her actions to be a seizure," and "[t]here can be a mere moment of seizure of a person — which is often described in Supreme Court precedent as a 'meaningful interference, *however brief*, with an individual's freedom of movement.'" *Vardeman,* 55 F.4th at 1050, 1052. Thus, even the brief moments of interference with Marquis's ability to leave during the "fight for your life" training constitute a seizure under the Fourth Amendment. And certainly, by the time Marquis's requests to stop are denied, and he becomes incapacitated through Officer-led violence, he was effectively seized.

### D. Because Marquis Kennedy was seized, he was denied the constitutional right to medical care.

As discussed above, because Marquis was seized by the officers during the "fight for your life" training exercise, he also enjoyed a constitutional right to medical care during that seizure, which was violated by the officers. *See Nerren v. Livingston Police*

*Dep't,* 86 F.3d 469, 472-73 (5th Cir. 1996) (holding that arrestees are a "subset of pretrial detainees"); *see also Allen v. Hays,* 65 F.4th 736, 747 (5th Cir. 2023) (describing constitutional right to medical care under the Fourteenth Amendment). It is disingenuous for the Officers and City to allege that Marquis was not seized when their actions so incapacitated him that he lost consciousness. And yet even at that point, they denied him medical care to the point that he was deprived of oxygen for more than five minutes, with expected deadly consequences.

### E. Because there was a constitutional violation, Plaintiffs' claims against the individual officers and the City should not be dismissed.

It also follows that because Plaintiff has properly pled constitutional violations, Plaintiff has also properly pled a basis for § 1983 liability against the City and the individual officers.

### III.    CONCLUSION & PRAYER

For these reasons as well as those set out in their original response to the motions to dismiss, Plaintiff Brittney Kennedy, Individually as Surviving Spouse, and on Behalf of Minor M.S.K., and as Personal Representative of the Estate of Marquis Kennedy, respectfully requests that the Court sustain Plaintiffs' objections to the Magistrate Judge's Findings, Conclusions, and Recommendation (Doc. 69), that the City of Arlington's Motion to Dismiss (Doc. 37) and the Individual Officer Defendants' Motion to Dismiss (Doc. 61) be denied. In the alternative, Plaintiff requests the opportunity to amend her complaint to rectify any deficiencies as outlined in the Magistrate's Findings,

Conclusions, and Recommendation (Doc. 69). Plaintiff further requests such other and further relief to which she may be justly and equitably entitled.

Respectfully submitted,

By: */s/Shelby J. White*
Roland Witherspoon
State Bar No. 24086097
litigation@withlaw.com
7290 Crosswater Ave.
Tyler, Texas 75703
(903) 597-2500 – Office
(866) 269-3770 – Facsimile

and

Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
Shelby J. White
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

I hereby certify that on **November 29, 2024**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Cynthia Withers
cynthia.withers@arlingtontx.gov
Joshua A. Skinner
joshua.skinner@arlingtontx.gov
Benjamin J. Gibbs
benjamin.gibbs@arlingtontx.gov
Alexander J. Lindvall
Alexander.lindvall@arlingtontx.gov
City Of Arlington
City Attorney's Office
P.O. Box 90231, MS 63-0300
Arlington, Texas 76004-3231
*Attorneys for Defendant The City of Arlington, Texas Arlington Police Department, Arlington Police Training Academy ("d/b/a Arlington Basic Police Training Academy" in Caption), City of Arlington Purchasing Department*

Thomas P. Brandt
tbrandt@fhmbk.com
Christopher D. Livingston
clivingston@fhmbk.com
Fanning Harper Martinson
Brandt & Kutchin, PC
A Professional Corporation
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
*Attorneys For Defendant Officers*

Todd D. Ogden
togden@maronmarvel.com
John P. Parsons
jparsons@maronmarvel.com
Maron Marvel Bradley
Anderston & Tardy LLC
2001 Bryan Street, Suite 3050
Dallas, Texas 75201

Joseph F. Cleveland, Jr.
jcleveland@belaw.com
Brackett & Ellis, PC
100 Main Place
Fort Worth, Texas 76102

*Attorneys for Defendant Gracie Global, LLC d/b/a Gracie University*

　　　　　　　　　　　　　　　*/s/ Shelby J. White*　　　　　　　　　
　　　　　　　　　　　　　　　**Shelby J. White**